**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOSEPH LAGANA | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-11-218 |
| J.P. MORGAN, et al. | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending is Defendants' Motion for Summary Judgment.  ECF No. 12.  Although he was advised of his right to file a response in opposition to Defendants' motion and of the consequences of failing to do so, Plaintiff has not filed anything further in this case.[1]  *See* ECF No. 13.   The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' motion shall be granted.

**Background**

Plaintiff Joseph Lagana ("Lagana") alleges he was housed on disciplinary segregation in housing unit 4 with inmate James Henson in August of 2008.   He states that he experienced and witnessed "numerous acts of harassment, intimidation and retaliation" against Mr. Henson and personally suffered "backlash" as a result.  ECF No. 1 at p. 5.  In November 2008, Henson filed a civil rights complaint and Lagana provided a supporting witness statement for use in Henson's case.  The complaint was served sometime in late January 2009.  *Id*.  Once the papers were served, Lagana alleges he began to suffer many blatant subtle acts of harassment, intimidation, and retaliation.  He claims one of the "more subtle acts" of retaliation was the denial of library services.  Lagana states that the denial of library services impacted his ability to litigate his court cases because the majority of his library requests were for "law references dealing with my court cases at least initially." *Id*.

---

[1] Plaintiff sought, and was granted, two extensions of time in which to file a Response in Opposition.  ECF No. 14 – 16.

Lagana explains that in order to access library materials, inmates are required to file a request which is deposited in the tier mail box for collection and subsequently delivered via institutional mail to the appropriate department.  Lagana further states that when the department where the institutional mail is delivered responds to the requests, the responses are delivered by officers on the 12 a.m. to 8 a.m. shift.  Responses are passed under the cell door of the inmate to whom they are addressed.  Lagana claims there is "absolutely no accountability by any department on what is received and what is returned."  ECF No. 1 at p. 5.

With respect to Lagana's requests to the library, he claims the institutional mail delivery system allows for acts of interference and retaliation.  Henson and Lagana began to suspect something when they no longer received institutional mail after Henson's complaint had been served, despite their repeated requests to the library.  They confirmed their suspicions when they began sending in requests using other inmates' names as well as their own and the other inmates would receive responses but Henson and Lagan would not.  ECF No. 1 at p. 6.

Lagana claims he and Henson then began personally giving their requests to the third shift officers, CO II F. Miller and CO II Miller, with an explanation regarding the problem they had experienced so the officers could make certain their requests were personally filed.  The extra precautions did not resolve the problem; Lagana and Henson still did not receive institutional mail. In June of 2009, Lagana states he finally received a response from the library that specifically stated it was the fifth or sixth time they had sent him the information requested.[2] ECF No. 1 at p. 6.

Lagana claims he filed multiple grievances alleging third shift officers were taking or interfering with his mail and that his library requests went unanswered.  Shortly after he started filing grievances, Lagana was moved to another cell "to alleviate the retaliation going on from

---

[2]  Lagana states that he retains this evidence.  ECF No. 1 at p. 6.

James Henson's civil suit." ECF No. 1 at p. 7.   One week prior to Lagana's move, Sergeant Barry of the third shift was sent to investigate an unrelated administrative remedy, at which time Lagana showed him documentary evidence that he was not receiving library materials.  Lagana claims he met with Warden Morgan and Major Mellott on December 23, 2009.  Morgan and Mellott told Lagana they would try to alleviate the ongoing problems with the library services and Mellott told Lagana he would be his contact person with respect to the problem.  Lagana received these assurances despite a meeting with Sergeant Shimko and Lt. Friend on December 1, 2009, during which Lagana was told none of his complaints would be investigated. *Id*.

Lagana claims he began having problems with Librarian Charles Albright after his meeting with the warden.  He could not obtain LASI forms used to request copies of legal cases. Lagana states he needed copies of cases for "my own person criminal cases and in responses from the grievance commission." ECF No. 1 at p. 8.  In addition, Lagana alleges that when he sent legal materials back to the library, Albright claimed the materials were never received. Lagana claims Albright then began allowing other inmates to dictate the materials he would receive as well as the responses given to him.  He states this practice was a violation of policy. *Id*.

Lagana then filed grievances about the fact that there were no separate boxes for the transmission of legal materials and that he, as well as other inmates, suffered interference by officers.  Responses to Lagana's complaints dismissed his allegations, claimed there was no problem, and that Lagana was harassing officers. ECF No. 1 at pp. 8 – 9.  In addition, Lagana claims Officers F. Miller and Miller, as well as Sgt. Barry, continued to work the third shift and make excuses about Lagana not receiving mail.  Although he received LASI request forms, Lagana claims it took months to receive the cases he requested even though they arrived in the

library in a matter of weeks.  In the summer of 2010, Lagana states Mr. Kennedy took over the library, but all the same problems, including denial of LASI forms, delay in receiving cases, disappearance of responses from the library, and claims that items returned to the library were not received persisted.  *Id*. at p. 9.

Lagana states that as an indigent inmate he was required to go through his case manager, Dave Bittinger, for copy work.  Lagana claims, however, that Bittinger refused to make copies, destroyed copies, had Lagana's cell searched, provided copies late, and outright refused to comply with local civil court orders as well as institutional policy to provide copies.  ECF No. 1 at pp. 9 – 10.  Lagana alleges Bittinger's conduct was a part of a conspiracy with Warden Morgan and although he grieved the actions taken against him, his claims were never investigated.  Further, Lagana claims the grievance coordinator never found merit in any one of his complaints since they met on December 1, 2009.  Lagana claims these actions constitute deliberate indifference, cruel and unusual punishment, negligence, and a violation of his due process rights.  As relief he seeks in excess of 3 million dollars in damages.  *Id*. at p. 10.

Defendants assert that Lagana raised the claims raised in the instant case in *Lagana v. Morgan*, Civ. Action PJM-10-1232 (D. Md.).  ECF No. 12.  Although the previously filed claim was pending when the instant Complaint was filed, this Court has since granted summary judgment in Defendant Morgan's favor.  Defendants state Lagana should be precluded from re-litigating the same claim under the principles of *res judicata*.  With respect to the merits of Lagana's claims, Defendants assert the claimed violations of Division of Correction policy are insufficient to state a constitutional claim and Lagana has failed to allege an actual injury.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant
> is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will

defeat the motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the

mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346

F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court

should "view the evidence in the light most favorable to....the nonmovant, and draw all

inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

In *Lagana v. Morgan*, Civ. Action PJM-10-1232 (D. Md.) this Court addressed the claims

asserted in the instant case as follows:

> Plaintiff does not allege an actual injury resulting from denial of photocopies,
> documents or legal research.  Although he claims to be a party in numerous cases,
> he has pointed to no missed deadline or loss of a meritorious claim resulting from

the alleged delays in providing him with copies or legal materials.  Additionally,
even if Defendant confiscated legal documents from Plaintiff's cell, there
apparently was no actual harm the resulted to Plaintiff's ability to litigate a
meritorious claim. While failure to allege actual harm may be an oversight on
Plaintiff's part, it is doubtful he could remedy the issue.  Plaintiff has filed
numerous cases in this Court.[3]  The pages of documents Plaintiff filed in this case
alone number in the hundreds and includes numerous pages of exhibits as well as
pages of case citations.  *See* ECF No. 1, 4 and 28.  Thus, it is clear that Plaintiff
has not been denied access to courts.

*Id*. at ECF No. 29 at p. 8.  With respect to his claims of retaliation, this Court observed:

Plaintiff claims he was retaliated against for filing lawsuits.  The alleged
retaliation consisted of denial of a medical diet; sabotage of medical diet trays;
being refused toilet paper; and being kept from seeing a doctor.  During all times
relevant to this complaint Plaintiff was confined to disciplinary segregation, and
inmate his meals were brought to his cell.  He claimed that he was prescribed a
2000 calorie a day diet, but did not receive it when it was prescribed.  He alleged
that the margarine he was served was purposely put under food so it would melt
and he would be unable to use it.  On another occasion Plaintiff complained that
mustard had been served on his sandwich and he did not like mustard.  ECF No.
28 at §§10 and 13.  Plaintiff's complaints were dismissed with the explanation
that the preparation of trays is supervised and every effort is made to insure they
are properly prepared.  To the extent Plaintiff's trays were not what they should
be, Defendant claims the errors were inadvertent.  *Id.* at §16.  Defendant admits to
a delay in Plaintiff's receipt of a medically prescribed diet, but attributes the brief
delay to the failure of paperwork being forwarded to the appropriate personnel.
ECF No. 19 at Ex. 8.  The evidence supports the conclusion that the errors were
unintentional.  Inadvertent delays and errors in meal preparation, without more,
are not enough to establish a claim of retaliation.

*Id*. at pp. 9 – 10.

Where there has been a final judgment on the merits in a prior suit; an identity of the

cause of action in both the earlier and the later suit; and an identity of parties or their privies in

the two suits, *res judicata* is established.  *See Pension Ben. Guar. Corp. v. Beverley*, 404 F. 3d

243, 248 (4th Cir. 2005).    The doctrine of *res judicata* precludes the assertion of a claim after a

---

[3] *See Lagana v. Baucom*, Civ. Action PJM-10-1232 (D. Md.),  *Lagana v. Shearin*, Civ. Action PJM-10-3488 (D.
Md.), *Lagana v. Tessema et al.*, Civ. Action PJM-10-3493 (D. Md.), *Lagana v. Morgan et al.*, Civ. Action PJM-10-
3625 (D. Md.), *Lagana v. Morgan et al.*, Civ. Action PJM-11-85 (D. Md.), and  *Lagana v. Morgan et al*, Civ. Action
PJM-11-218 (D. Md.).

judgment on the merits in a prior suit by the same parties on the same cause of action.  *See*

*Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991).  In addition, "'[n]ot only

does res judicata bar claims that were raised and fully litigated, it prevents litigation of all

grounds for, or defenses to, recovery that were previously available to the parties, regardless of

whether they were asserted or determined in the prior proceeding.'" *Id*., *quoting Peugeot Motors*

*of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989).

In the instant case Lagana has named Defendants in addition to Warden Morgan, the sole

Defendant named in the prior action; however, the claims he now raises concern the same facts

and circumstances as those litigated in the prior case.  "'A judgment or decree among parties to a

lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those

proceedings.'" *Richards v. Jefferson County, Ala*., 517 U.S. 793, 798 (1996) quoting *Martin v.*

*Wilks*, 490 U.S. 755, 762 (1989).  Where parties are in privity with parties involved in the prior

litigation, *res judicata* operates as a bar to subsequent litigation.  *Id*.  Parties are in privity with

one another when one is adequately represented by the interests of the party in the prior suit.  In

this case, the additional Defendants named had their interests adequately represented by Warden

Morgan.   Additionally, Lagana has not added any claims or evidence in this case that would

prompt a different conclusion regarding the merits of his claims.  Accordingly, Defendants are

entitled to summary judgment in their favor.  A separate Order follows.


May 23, 2012
Date

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE


7